UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BSD MANAGEMENT,

    Plaintiff,

v.

    Case NO. 2:22-cv-11763

    Hon. STEPHEN J. MURPHY, III

ERAN ROZEN; MR. FROST, INC,
SALPAI INCAND BELLAS
& WACHOWSKI,

    Defendants.

| SOLOMON M. RADNER (P73653) | STEVEN P. BLONDER |
|---|---|
| MARTIN E. RADNER (P79894) | Much Shelist, P.C |
| Radner Law Group, PLLC | Attorney for Bellas and Wachowski |
| Attorney for Plaintiff | 191 N. Wacker Drive, Suite 1800 |
| 17515 West Nine Mile Road, Ste 1050 | Chicago, IL 60606 |
| Southfield, MI 48033 | (312) 521-2402 |
| (313)-573-8761/ Fax: (248)281-5264 | Sblonder@muchlaw.com |
| Solomon@radnerlawgroup.com | |
| martin@radnerlawgroup.com | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, BSD Management, ("BSD") a Michigan company, by and through its attorneys, Radner Law Group PLLC and Solomon M. Radner, and respectfully alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. BSD is a Michigan limited liability company with an address at 26150 Greenfield Road, Oak Park Michigan 48237.and was at all times relevant in the

1

business of providing PPE materials to local hospitals and other health care facilities in Michigan among other businesses.

2. Upon information and belief, Defendant Mr. Frost, Inc. is a domestic business corporation domiciled in New York, New York.

3. Upon information and belief, Defendant Salpai. Inc., is a domestic business corporation domiciled in New York, New York.

4. Upon information and belief, Defendant Eran Rozen is the CEO of Salpai Inc., located in New York, New York.

5. At all times relevant, Defendants Eran Rozen, Mr. Frost Inc, Salpai,Inc. and Ballas & Wachowski were acting together in concert to conduct business in the State of Michigan with Plaintiff, whom all defendants knew at all times was based in Michigan.

6. Defendants Eran Rozen, Salpai Inc., and Mr. Frost Inc (herein jointly "Rozen and Co") are all the same single entity for purposes of this action and acted as broker/middleman between BSD and an alleged seller.

7. Defendant Bellas and Wachowski was at all pertinent times a law firm based in Chicago, IL, and acted as the escrow agent for the subject transactions.

8. The facts giving rise to this action substantially took place in the State of Michigan with the funds being wired from a Michigan LLC, with the knowledge of all parties.

9. This Court has Personal Jurisdiction over Defendants pursuant to MCL 600. 711 and MCL 600.715.

10. Venue is proper in this Court pursuant to 28 USC 1332(a), given that the plaintiff and defendant shave complete diversity of citizenship.

11. The amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and is otherwise within the jurisdiction of this Honorable Court.

## GENERAL ALLEGATIONS

12. On June 19, 2020, BSD Management entered into an agreement with the defendants for the purchase of 50,000 boxes of nitrile gloves for $9.00 per box, for a total of $450,000.00. The estimated delivery date was to be between June 30, 2020, and July 2, 2020. The general terms were memorialized in a document titled "Invoice # 1068" dated June 19, 2020.

13. Plaintiff had buyers who were ready to purchase the gloves from Plaintiff which would have made Plaintiff a profit of $200,000.00.

14. Rozen and Co, and Bellas and Wachowski assured Plaintiff that the seller was legitimate and willing and able to provide the amount of nitrile gloves that Plaintiff requested.

15. Plaintiff paid the amount of $450,000.00 to Rozen and Co. on June 22, 2020.

16. Then, Rozen and Co advised BSD that the value of the gloves had changed and Rozen and Co breached the contract, refusing to honor it, unless BSD agreed to pay an additional $1.50 per box, for a total of an additional $75,000.00. Despite there being a contract in place, BSD realized it was in a tough predicament, having already paid, and therefore agreed to pay an additional $1.50 per box, memorialized in a document titled "Invoice # 1075" dated June 29, 2020.

17. Plaintiff then paid the additional $75,000.00 to Rozen and Co. on July 3, 2020

18. At this point Plaintiff was still going to net a profit of $125,000.00

19. Based on the assurances of Defendants that seller would provide the requested nitrile gloves, BSD agreed to have the entire $525,000.00, less Rozen and Co's commission, placed into Bellas and Wachowski's trust account while the deal was finalized. Bellas And Wachowski accepted BSD's funds pursuant to an escrow agreement it had with Rozen and Co, and thereby acknowledged and agreed that it owed BSD a fiduciary duty.

20. Bellas And Wachowski was only to release the funds when the goods had been produced by the end-seller.

21. A representative of Bellas and Wachowski spoke directly to Marty Babayov, member and owner of BSD Management, a Michigan Corporation and made specific assurances that the money is going to be safe in its Escrow account

22. Further, George Bellas from Bellas and Wachowski assured Mr. Babayov that the firm has done millions of dollars of business with the purported Seller, that the Seller was a legitimate supplier, and that in no way will Bellas and Wachowski release the money until the gloves were produced.

23. During the communications between George Bellas of Bellas and Wachowski and Mr. Babayov, it was clear that the money was going to be wired from a Michigan based corporation, BSD Management, to Bellas and Wachowski. All parties were certainly aware of this fact and were happy wo thave the funds wired from Michigan-based Plaintiff.

24. Further, the gloves were supposed to be delivered to Detroit Metropolitan Airport in Michigan; this too was a fact that all parties were aware of.

25. Bellas and Wachowski effectively lured BSD Management into the deal with Rozen and Co.

26. As stated herein, BSD wired the full $525,000.00 to Rozen and Co, who then wired the funds to Bellas and Wachowski.

27. Despite payment being made in full, the end-seller never produced the goods, thereby breaching the sales agreement.

28. However, despite that the contracted-for goods had still not been shipped to BSD or received by BSD, on an unknown date, upon information and belief Rozen and Co instructed Bellas and Wachowski to release a portion of BSD's

funds and to pay Rozen and Co its commissions. Both Rozen and Co. as well as Bellas and Wachowski knew that the funds were not to be released since they both knew the goods had not yet been produced. However, the funds were released anyway.

29. Then on another unknown date, Bellas and Wachowski released BSD's remaining funds. It is unknown to BSD at this time if Rozen and Co authorized this release or if Rozen and Co received a commission.

30. Plaintiff has demanded that Defendants return the funds but Defendants have refused.

31. To date, the contracted-for goods have still not been delivered and BSD's funds have not been refunded.

32. Plaintiff lost $525,000.00 in funds it sent Defendants and an additional $125,000.00 to $200,000.00 it would have made in profit had Defendants honored the agreement.

33. To make matters worse, Defendant Salpai sued Mr. Bellas in New York federal court in the Southern District of New York, and is preumsbaly receiving settlement payments. Rozen and Co did not notify BSD that the New York lawsuit was filed, nor did they notify Plaintiff of any settlement proceeds being paid to Rozen and Co, if any. Such payments, if they exist, further prove Rozen and Co's bad faith and fraudulent intentions, because that is BSD's money.

## COUNT I – STATUTORY CONVERSION
### *BSD VS ALL DEFENDANTS*

34. Plaintiff incorporates by reference all prior allegations as if fully restated.

35. MCL 600.2919a provides, "A person damages as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs, and reasonable attorney fees:

   a. Another person's stealing or embezzling property, or converting property to the other person's own use.

   b. Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

36. Defendants, through their actions knowingly, recklessly, intentionally and negligently violated MCL 600.2919(a) and (b).

37. Defendants used the funds for a purpose personal to Defendants interests.

38. Defendants used BSD's funds for their own use.

7

39. BSD suffered an immediate out of pocket loss in the amount of $525,000.00 as well as lost profits of $125,000.00 – $200,000.00, as a direct and foreseeable result of Defendants' conversion of BSD's funds.

40. BSD is thus entitled to treble damages as well as attorney fees.

## COUNT II – COMMON LAW CONVERSION
### *BSD VS ALL DEFENDANTS*

41. Plaintiff incorporates by reference all prior allegations as if fully restated.

42. Defendants acting in concert, performed at least any act of dominion wrongfully exerted BSD's funds in denial of, or consistent with BSD's rights therein. Simply put, Defendants released BSD's funds despite the fact that the contract-for goods were never produced.

43. Defendants intentionally disposed of BSD's funds.

44. Defendants intentionally destroyed or altered BSD's funds.

45. Defendants used BSD's funds without any authority.

46. Defendants received BSD's funds through a transaction intending to acquire for itself or another a proprietary interest in it.

47. Defendants misdelivered BSD's funds.

48. Defendants refused to surrender BSD's funds upon BSD's demands.

49. Defendants conduct with BSD's funds were inconsistent with BSD's property rights.

50. BSD suffered an immediate out of pocket loss in the amount of $525,000.00 as well as lost profits, as a direct and foreseeable result of Defendants' conversion of BSD's funds.

51. BSD is thus entitled to damages as well as costs and attorney fees.

52. BSD is further entitled to treble damages.

### COUNT III- FRAUD – BREACH OF CORPORATE VEIL
### *BSD V ROZEN AND CO*

53. Plaintiff incorporates by reference all prior allegations as if fully restated.

54. Rozen and Co made a material representation that the seller would provide the gloves to Plaintiff.

55. The representation was false.

56. Upon information and belief, when Rozen and Co made the representation, it knew that the representation was false or made it recklessly, without knowledge of its truth and as a positive assertion

57. Rozen and Co made the representation with the intention that BSD would act upon it

58. BSD acted in reliance on the representation.

59. Mr. Rozen dominated and controlled both Salpai Inc and Mr. Frost – the two companies utilized by Mr. Rozen in the subject transactions; and

9

utilized that used that domination and control to perpetrate a fraud or wrong as articulated herein; and (3) the defendant's domination and control was the proximate cause of the wrong perpetuated.

60. BSD suffered damages because of it.

## COUNT IV- UNJUST ENRICHMENT
### BSD V ROZEN AND CO

61. Plaintiff incorporates by reference all prior allegations as if fully restated.

62. BSD paid $525,000.00 to Bellas and Wachowski which at least a portion of was paid to Rozen and Co.

63. Rozen and Co only deserved payment if the sale would go through.

64. BSD paid $525,000 for nitrile gloves which it never received.

65. The portion received by Rozen and Co constitutes a substantial benefit.

66. BSD suffered damages as a result of Rozen and Co's conduct.

## COUNT V – BREACH OF IMPLIED CONTRACT
### BSD VS BELLAS AND WACHOWSKI

67. Plaintiff incorporates by reference all prior allegations as if fully restated.

68. Plaintiff wired $525,000.00 to Rozen and Co with the understanding that Rozen and Co would wire the funds to Bellas and Wachowski to be held in

escrow. Bellas and Wachowski has an escrow agreement with Rozen and Co, to which BSD is not a party. However, BSD had direct communication with Bellas and Wachowski, during which BSD was assured that BSD's funds were safe with Bellas and Wachowski and would only be released when the products were provided.

69. Despite there being no explicit written contact between BSD and Bellas and Wachowski, the fact remains that (1) the parties were competent to contract, (2) over a proper subject matter, (3) consideration was adequate, (4) there was mutuality of agreement, and (5) there was mutuality of obligation.

70. Thus, an implied contract existed, which was breached when Bellas and Wachowski decided to release BSD's funds despite BSD never receiving the contracted-for goods.

71. Plaintiff suffered an immediate out of pocket loss in the amount of $525,000.00 as well as lost profits, as a direct and foreseeable result of Defendants' release of BSD's funds.

## COUNT VI PROMISSORY ESTOPPEL
### *BSD VS BELLAS WACHOWSKI*

72. Plaintiff incorporates by reference all prior allegations as if fully restated.

73. Bellas and Wachowski made to BSD (1) a clear and definite promise to safeguard BSD's funds as stated herein, (2) that Bellas and Wachowski should have

11

expected that the promise would induce reliance and that there was a change in BSD's position due to reliance on the promise, specifically that BSD agreed to wire $525,000.00 to be placed in Bellas and Wachowski's trust account, and (3) that injustice can be avoided only by enforcing the promise.

74. Plaintiff suffered an immediate out of pocket loss in the amount of $525,000.00 as well as lost profits, as a direct and foreseeable result of Defendants' release of BSD's funds.

## COUNT VII BREACH OF FIDUCIARY DUTY
### *BSD VS BELLAS AND WACHOWSKI*

75. Plaintiff incorporates by reference all prior allegations as if fully restated.

76. BSD reasonably reposed faith, confidence, and trust in Defendant's judgment and advice.

77. Defendant betrayed the confidence BSD placed in Defendant by sending unearned funds to Rozen and Co and/or others, and before the seller produced the nitrile gloves to BSD.

78. The Defendant was acting as a fiduciary of BSD.

79. The Defendant breached a fiduciary duty to BSD.

80. BSD suffered damages as a result of the breach.

81. The Defendant's breach of fiduciary duty caused BSD damages.

82. BSD suffered an immediate out of pocket loss in the amount of $525,000.00 as well as lost profits, as a direct and foreseeable result of Defendants' release of BSD's funds

WHEREFORE, Plaintiff BSD Management respectfully prays of this Honorable Court that judgment be entered in favor of Plaintiff and against Defendants jointly and severally, and that the Court award all damages permitted by law, including treble damages and attorney fees where applicable, in an amount in excess of $75,000.00 exclusive of interest in addition to any other relief that this Honorable court deems just and equitable.

Respectfully Submitted,

/s/ Solomon M. Radner
Solomon M. Radner (P73653)
Attorney for Plaintiff
Radner Law Group PLLC
17515 West Nine Mile Road, Suite 1050
Southfield, MI 48033
T: 877-723-6375
Fax: 866-571-1020
Solomon@RadnerLawGroup.com

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

DATED:     October 6, 2022