UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BSD MANAGEMENT, LLC,                                    Case No. 22-11763

      Plaintiff,                                              F. Kay Behm
v.                                                      United States District Judge

ERAN ROZEN, *et al.*,

      Defendants.
_____/

**OPINION AND ORDER GRANTING MOTION TO**
**DISMISS THE SECOND AMENDED COMPLAINT (ECF No. 85)**

**I.    PROCEDURAL HISTORY**

Defendant Bellas & Wachowski removed this action from Oakland County

Circuit Court based on diversity jurisdiction on July 29, 2022.  (ECF No. 1).  On July

20, 2023, BSD filed the Second Amended Complaint (SAC), dismissing Defendants

Rozen, Mr. Frost, Inc., and Salpai, Inc., leaving Defendant Bellas & Wachowski,

and adding Defendant George Bellas.  (ECF No. 82).  Defendants have moved to

dismiss the SAC.  (ECF Nos. 85, 86).  This matter is fully briefed.  (ECF Nos. 87, 89).

The court held a hearing via videoconference on this matter on February 21,

2024.  (ECF No. 91).  For the reasons set forth below, the court **GRANTS**

Defendants' motion to dismiss the Second Amended Complaint in its entirety.

## II.    FACTUAL BACKGROUND

According to the SAC, BSD entered into an agreement with non-party Eran Rozen and an end-seller for the purchase of 50,000 boxes of nitrile gloves for $9.00 per box, for a total of $450,000.00.  (ECF No. 81, ¶ 8).  The general terms were memorialized in a document titled "Invoice # 1068" dated June 19, 2020.  *Id.* BSD previously submitted this invoice in support of its motion for preliminary injunction and represented that "BSD and Salpai entered into an agreement that BSD would purchase PPE goods from Salpai totaling $450,000.00."  (ECF No. 73, PageID.440, ¶ 2).  This invoice identifies Salpai, Inc. as the seller and BSD as the buyer.  (ECF No. 73-2).  BSD had buyers who were ready to purchase the gloves for a price that would have garnered BSD a profit of $200,000.00.  (ECF No. 81, ¶ 9).  Bellas assured BSD that the seller was legitimate and willing to provide the gloves.  *Id.* at ¶ 10.  BSD paid $450,000 to Rozen on June 22, 2020, which was placed in escrow with Bellas.  *Id*. at ¶ 11.  BSD stated that it wired $450,000.00 to Salpai, referencing "invoice 1068" on June 22, 2020.  (ECF No. 73, PageID.440, ¶ 3; ECF No. 73-3).  Rozen advised BSD that the value of the gloves increased and refused to honor the agreement unless BSD paid an additional $75,000.  *Id*. at ¶ 12.  BSD agreed, and the price increase was memorialized in a document titled "Invoice # 1075" dated June 29, 2020.  *Id*.  This invoice shows Salpai as the seller

2

and BSD as the buyer, totals $62,500, and indicates it is for the balance of invoice 1068.  (ECF No. 73-4).  The SAC, however, alleges that BSD paid $75,000 to Rozen on July 3, 2020, which was also to be placed in escrow with Bellas.  (ECF No. 81, ¶ 13).  According to the documents submitted by BSD in support of its motion for preliminary injunction, BSD made a payment to Salpai on July 3, 2020 in the amount of $228,750.  (ECF No. 73-5).

BSD alleges that, based on the assurances of Defendants and Rozen that the end-seller would provide the requested nitrile gloves, BSD agreed to have the entire $525,000.00, less Rozen's commission, placed into Defendants' trust account while the deal was finalized.  (ECF No. 81, ¶ 15).  The SAC further alleges that "Bellas accepted BSD's funds in his capacity as escrow agent and thereby acknowledged and agreed that it owed BSD a fiduciary duty, even though there never existed a formal contract between Mr. Bellas and BSD."  *Id*.  BSD also claims that per the parties' discussion before BSD wired the funds, "Bellas was only to release ***after*** the goods had been produced by the end-seller."  *Id*. at ¶ 16 (emphasis in original).  The SAC alleges that a representative of Bellas spoke directly to Marty Babayov, member and owner of BSD and made specific assurances that BSD's money would be safe in Bellas' escrow account until the deal was complete.  *Id*. at ¶ 17.  Further, Bellas personally assured Babayov that

the firm had done millions of dollars of business with the Seller, that the end-Seller was a legitimate supplier, and that Bellas would not release BSD's funds until the goods were produced.  *Id*. at ¶ 18.  BSD wired the funds to Rozen, who then wired the funds to B&W.  *Id*. at ¶ 21.  The Seller never produced the goods.  *Id*. at ¶ 22.  B&W released the funds even though the good had not been produced.  *Id.* at ¶ 24.  BSD brings claims of breach of implied contract, promissory estoppel, and breach of fiduciary duty against Defendants.

Defendants maintain that the SAC improperly contradicts prior versions of the Complaint and other filings submitted by BSD in this case.  More specifically, Defendants point to a prior filing that referred to an escrow agreement between Bellas (the Escrow Agent), Salpai, Inc. (the Buyer) and Zeleny Solutions, Inc. (the Seller).  (ECF No. 73, ¶ 10, referencing SDNY 21-02677, ECF No. 29-1).  In the prior filing, BSD asserted that the escrow agreement's existence was a fact that "the parties either agree on, or that simply cannot be disputed."  (ECF No. 73, p. 1 and ¶¶ 9-10).  The Escrow Agreement provides that Salpai sent the Funds to Bellas and that the Escrow Agreement governed the terms of release of the Funds connected with the Products.  *Id*.; *see also* ECF No. 86-1.  The Escrow Agreement required the Escrow Agent to hold the Funds until it received "verifiable written confirmation of a satisfactory SGS Report being received by the Buyer.  Upon the

4

aforementioned written confirmation, the Escrow Agent will release 50% of the funds held to the Seller.  Upon receipt of a written confirmation from the Buyer to the Escrow Agent that a Bill of Lading has been submitted to the Buyer, the Escrow Agent will release the balance of the funds to the Seller."  (ECF No. 86-1, ¶ 7).

B&W filed motions to dismiss both prior versions noting that Michigan law does not recognize BSD's alleged tort claim (breach of fiduciary duty), nor its alleged quasi-contract claims (promissory estoppel, implied contract), when there is an agreement which involves the same subject matter as those claims.  B&W argues that BSD proffers an amended complaint from which it improperly excises the allegations admitting the existence of the escrow agreement which governed the transaction at issue, in order to avoid dismissal mandated by clearly applicable Michigan law.  BSD also asserted in its prior versions of its Complaints that the funds wired to Bellas were accepted only "pursuant to an escrow agreement with Salpai, Inc." (ECF No. 1-1, ¶ 19; ECF No. 18 ¶ 19).  More specifically, Defendants argue that after B&W filed motions to dismiss arguing that BSD's stated claims against B&W could not be legally maintained when an escrow agreement exists, BSD eliminated from its pleading the assertion that the funds at issue here were accepted pursuant to an escrow agreement.  (ECF No.

82).  Instead, BSD now makes only a vague assertion that Bellas accepted the funds in "his capacity as escrow agent." *Id*. at ¶ 15.  And, like all the prior versions of the Complaint, Defendants maintain that the gravamen of BSD's complaint is the allegation that the Funds were released by Defendants before the Products were produced.  *Id*. at ¶ 23.

**III.   ANALYSIS**

    A.   <u>Standard of Review</u>

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true*." League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678.  However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

     B.    <u>Effect of Judicial Admissions</u>

Defendants argue that BSD is bound by its judicial admissions made in prior pleadings regarding the Escrow Agreement.  The court need not resolve any issues regarding judicial admissions.  BSD does not dispute the existence of the

Escrow Agreement in its response to the motion to dismiss.  Instead, it claims that

because it was not a party to the agreement, it is "meaningless."  Moreover, while

BSD does not explicitly identify the "Escrow Agreement" in the SAC, it references

the escrow process throughout.  (ECF No. 81, ¶¶ 2, 11, 13, 15, 17, 28, 34).  "When

a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint

and any exhibits attached thereto, public records, items appearing in the record

of the case and exhibits attached to defendant's motion to dismiss so long as they

are referred to in the Complaint and are central to the claims contained therein."

*Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*,

259 F.3d 493, 502 (6th Cir. 2001)); Moore's Federal Practice Civil § 12.34 ("The

courts may consider the following [on a motion to dismiss]: Documents attached

to complaint, Undisputed documents alleged or referenced in complaint, [and]

Public records.").  The court finds the Escrow Agreement is sufficiently referenced

in the SAC and further concludes that it is central to the claims in this case.

Additionally, BSD mentions its payments to Salpai/Rozen throughout the SAC and

the invoices governing its agreement with Salpai (*see* ECF No. 82, ¶¶ 8, 11, 12, 13)

and accordingly, the court may also consider the evidence of those payments,

which BSD previously submitted in support of its motion for preliminary

injunction.  (ECF Nos. 73-2, 73-3, 73-4, 73-5).

C.   <u>Breach of Fiduciary Duty</u>

To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty. *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666 (2020). For a fiduciary duty to exist, a fiduciary relationship must also exist. *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross & Blue Shield of Michigan*, 391 F. Supp. 3d 706, 716 (E.D. Mich. 2019). Under Michigan law, fiduciary relationships usually arise in one of four situations:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*In re Karmey*, 468 Mich. 68, 75 n. 2 (2003) (quoting Black's Law Dictionary (7th ed. 1999)). There are certain relationships that automatically yield a fiduciary obligation: "trustees to beneficiaries, guardians to wards, attorneys to clients, and doctors to patients." *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich. App. 290, 294 (1981). Michigan courts have "been reluctant to extend the cause of action for breach of fiduciary relationship beyond the traditional context."

*Rockwell Medical, Inc. v. Yocum*, 2014 WL 2965307, *5 (E.D. Mich. June 26, 2014) (quoting *Bero Motors v. Gen. Motors Corp.*, 2001 WL 1167533, at *4 (Mich. Ct. App. Oct. 2, 2001)).

The SAC presumes the existence of a fiduciary relationship by alleging that "Bellas accepted BSD's funds in his capacity as escrow agent and thereby acknowledged and agreed that it owed BSD a fiduciary duty, even though there never existed a formal contract between Mr. Bellas and BSD." (ECF No. 81, ¶ 15). BSD also claims that per the parties' discussion before BSD wired the funds, "Bellas was only to release ***after*** the goods had been produced by the end-seller." *Id*. at ¶ 16 (emphasis in original). However, "the duties and liabilities imposed on an escrow agent are those set forth in the escrow agreement." *Hills of Lone Pine Ass'n v. Texel Land Co.*, 226 Mich. App. 120, 124 (1997) (citing *Smith v. First Nat'l Bank & Trust Co. of Sturgis*, 177 Mich. App. 264, 268 (1989)). BSD's allegations are contrary to the plain language of the Escrow Agreement. The Escrow Agreement provides that <u>Salpai</u>, <u>not BSD</u>, sent the Funds to Bellas pursuant to the Escrow Agreement, which governed the terms of release of the Funds connected with the Products. (ECF No. 86-1). Michigan law is clear that an escrow agent owes fiduciary duties to those who entrusted it with the funds. *U.S. v. Currency $716,502.44*, 2008 WL 5158291, *3 (E.D. Mich. Dec. 5, 2008). Here, according to

the Escrow Agreement, Salpai entrusted Bellas with the Funds, not BSD.  Further,

the Escrow Agreement required the Escrow Agent to release 50% of the Funds

when it received "verifiable written confirmation of a satisfactory SGS Report

being received by the Buyer."  *Id*.  Then, on receipt of a written confirmation from

the "Buyer to the Escrow Agent that a Bill of Lading has been submitted to the

Buyer, the Escrow Agent will release the balance of the funds to the Seller."  (ECF

No. 86-1, ¶ 7).  Under Michigan law, "[a]n escrow agent may be held liable in tort

for the negligent performance of its duties or breach of its fiduciary duties," and

"[a]n escrow agent is bound by the terms and conditions of the escrow

agreement and charged with a strict execution of the duties voluntarily assumed."

*Id.* (quoting *Maimou v. Philip F. Greco Title Co.,* 2006 WL 397940, *1 (Mich. Ct.

App. Feb. 21, 2006) (citing *Smith v. First Nat'l Bank & Trust*, 177 Mich. App. 264

(Mich. Ct. App. 1989)).  Here, BSD seeks to impose a fiduciary duty on Defendants

that contradicts its fiduciary duties to Salpai under the Escrow Agreement.  This it

cannot do under Michigan law.  *Revelation Yogurt, LLC v. Kline Law Group, P.C.*,

2021 WL 1812694, at *2 (E.D. Mich. May 6, 2021) ("Because the duty to release

funds based on certain conditions arose only from the escrow agreement,

Michigan law bars" claims for common-law conversion, statutory conversion,

breach of fiduciary duty, negligence, and fraud.).

The SAC further alleges that a representative of Bellas spoke directly to Marty Babayov, member and owner of BSD and made specific assurances that BSD's money would be safe in Bellas' escrow account until the deal was complete. *Id*. at ¶ 17.  Further, BSD alleges that Bellas personally assured Babayov that the firm had done millions of dollars of business with the Seller, that the end-Seller was a legitimate supplier, and that Bellas would not release BSD's funds until the goods were produced.  *Id*. at ¶ 18.  These allegations are too vague and nonspecific to plausibly suggest the existence of a fiduciary relationship.  For example, a fiduciary relationship does not arise merely because the parties are friends or business acquaintances or otherwise merely in some kind of interpersonal relationship.  *Blackward Properties v. Sower*, 2014 WL 5690380, *1 (Mich. Ct. App. Nov. 4, 2014) (citing *Schuur v. Berry*, 285 Mich. 654, 660 (1938); *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 581–581 (1999)). Moreover, ordinary, arms-length business relationships do not create a fiduciary duty.  *German Free State of Bavaria v. Toyobo Co., Ltd*., 2007 WL 2986475, *7 (W.D. Mich. Oct. 10, 2007) (citing *Waun v. Univ. Coin Laundry Mach*., 2006 WL 2742007, at *8 (Mich. Ct. App. Sept. 26, 2006) ("claims of inexperience and reliance on defendants' expertise, a common situation in today's business environment, are not sufficient to create a fiduciary relationship.").  Nothing in

12

the SAC suggests that BSD placed in Defendants "the kind of blind trust or authority that would have given [Defendants] any meaningful 'advantage or superiority' over" BSD.  *Id*. at *2; *see also Portage Aluminum Co. v. Kentwood Nat'l Bank*, 106 Mich. App. 290, 294 (1981) (Fiduciary duties arise from "the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.").  Thus, the vague personal assurances identified in the SAC are not sufficient to establish a fiduciary relationship and this claim must fail.

      D.    <u>Implied Contract</u>

To state a claim for breach of contract under Michigan law, a plaintiff "must plead three elements: (1) a contract, (2) Defendants' breach of the contract, and (3) damages to Plaintiffs caused by the breach."  *Emergency Dep't. Physicians P.C. v. United Healthcare, Inc*., 507 F. Supp. 3d 814, 828 (E.D. Mich. 2020) (citing *Bank of Am., NA v. First Am. Title Ins*., 499 Mich. 74, 100-01 (2016)). When an explicit contract does not exist between two parties, an implied contract may arise from their conduct, language, or other circumstances evidencing their intent to contract.  *Featherston v. Steinhoff*, 226 Mich. App. 584 (1997).  To form an implied contract, parties must have: "(1) competency to contract, (2) proper subject

13

matter, (3) consideration, (4) mutuality of agreement, and (5) obligation." *Id*. (citing *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989)).

Defendants argue that a written agreement governs the parties' transaction (here, the Escrow Agreement) and thus, under Michigan law, a contract cannot be implied. *See Inge v. Rock Fin. Corp.*, 2004 WL 1778819, at *2 (Mich. Ct. App. Aug. 10, 2004) (citing *King v. Ford Motor Credit Co*, 257 Mich. App. 303, 327-328 (2003)); *see also Noel v. Fleet Finance, Inc.*, 971 F. Supp. 1102 (E.D. Mich. 1997) (there cannot be an express and implied contract covering the same subject matter at the same time). In response, BSD argues that it was not a party to the escrow agreement between Defendants and Salpai and that BSD's implied contract claim cannot be barred by a contract to which it was not a party.

Interpreting Michigan law, the Sixth Circuit has applied the rule that there cannot be an implied contract where an express contract governs a party outside the written contract. *Creelgroup, Inc. v. NGS American, Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013). The court further pointed out that an implied contract also requires that the parties have a mutual intention to contract. *Id*. (citing *Erickson v. Goodell Oil Co.*, 384 Mich. 207 (1970)). The allegations in the SAC do not suggest that Defendants had an intention to form a contract with BSD. Accordingly, BSD's implied contract claim must be dismissed for this reason and

because there is an express contract governing the transaction at issue.  *See*

*Williams v. CitiMortgage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012) (quoting *N.*

*Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir.

1998)) ("[W]hen a written instrument contradicts allegations in the complaint to

which it is attached, the exhibit trumps the allegations.")).

      E.    <u>Promissory Estoppel</u>

      Under Michigan law, the doctrine of promissory estoppel states: "[a]

promise which the promisor should reasonably expect to induce action or

forbearance on the part of the promisee or a third person and which does induce

such action or forbearance is binding if injustice can be avoided only by

enforcement of the promise."  *State Bank of Standish v. Curry*, 442 Mich. 76, 83

(1993) (citing Restatement (Second) of Contracts § 90 (1981)).  The first step of

this test is to determine whether there was, in fact, a valid promise.  The doctrine

of promissory estoppel defines a promise as "a manifestation of intention to act

or refrain from acting in a specified way, so made as to justify a promise in

understanding that a commitment has been made."  *Id*. (citing Restatement

(Second) of Contracts § 2 (1981)).  Because Michigan courts cautiously apply

promissory estoppel, they have held that not just any "promise" will satisfy the

test.  *Avertest, LLC v. Livingston Cnty., Michigan*, No. 20-1858, 2021 WL 3702196,

at *6 (6th Cir. Aug. 20, 2021).  A promise must be both "definite and clear" and a party's reliance on it "must be reasonable."  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co*., 280 Mich. App. 16, 41 (2008) (citing *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134 (1993)).  "[S]tatements that are indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct cannot serve as the foundation for an actionable reliance."  *Farrow Grp., Inc. v. Detroit Land Bank Auth.*, No. 351138, 2021 WL 70649, at *5 (Mich. Ct. App. Jan. 7, 2021) (citing *Bodnar v. St. John Providence, Inc*., 327 Mich. App. 203, 227 (2019) (quoting *State Bank of Standish*, 442 Mich. at 85-86)).  To determine whether a promise exists, the court must look to the totality of the circumstances surrounding the relationship or transaction and "objectively evaluate ... the parties' words, actions, and relationship."  *Id*. (citations omitted).  Michigan courts "will not enforce vague or general promises that require speculation about the promiser's actual duties under the promise."  *Avertest*, 2021 WL 3702196, at *6.

Defendants argue that BSD has done little more than parrot the elements of a claim for promissory estoppel and thus, its allegations are "too vague to be enforceable."  (ECF No. 86, PageID.538) (citing *Gardner v. Michigan State Univ*., 2022 WL 17998121, at *6 (Mich. Ct. App. Dec. 29, 2022); *Battah v. ResMAE Mortg. Corp*., 746 F. Supp. 2d 869, 876 (E.D. Mich. 2010) (formulaic recitation of

the elements of a claim without any supporting factual allegations is insufficient

to survive a motion to dismiss.)).  Nothing in the SAC suggests that Defendants

made a clear and definite promise to BSD.  BSD's promissory estoppel claim

appears to be based on the following allegations in the SAC:

- BSD claims that per the parties' discussion before BSD wired the funds, "Bellas was only to release ***after*** the goods had been produced by the end-seller."  (ECF No. 81, ¶ 16, emphasis in original).

- The SAC alleges that a representative of Bellas spoke directly to Marty Babayov, member and owner of BSD and made specific assurances that BSD's money would be safe in Bellas' escrow account until the deal was complete.  *Id*. at ¶ 17.

- Bellas personally assured Babayov that the firm had done millions of dollars of business with the Seller, that the end-Seller was a legitimate supplier, and that Bellas would not release BSD's funds until the goods were produced.  *Id*. at ¶ 18.

Moreover, any reliance on Defendants' alleged statements was not reasonable,

given that they contradict the express terms and obligations set forth in the

Escrow Agreement, as detailed above.  Finally, BSD's assertions contradict an

express written agreement governing the same subject matter -- the Escrow

Agreement -- thus its promissory estoppel claim fails as a matter of law.  *See*

*P.A.L. Env't Safety Corp. v. N. Am. Dismantling Corp.,* 2021 WL 634633, at *3 (E.D.

Mich. Feb. 18, 2021) ("[P]romissory estoppel can only be enforced when an

express contract on the same subject matter does not exist.").  This rule applies

even where the party claiming promissory estoppel is not a party to the contract. *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 387 (6th Cir. 2015) (Contrary to the plaintiff's assertions, the rule that "a contract will be implied only if there is no express contract covering the same subject matter" governs even where the party alleged to be unjustly enriched is a third party to the contract.) (quoting *Barber v. SMH (US), Inc*., 202 Mich. App. 366 (1993) and citing *Sullivan v. Detroit, Ypsilanti & Ann Arbor Ry*., 135 Mich. 661 (1904) ("If A. makes an express contract with B. to perform services for C., C. is not liable on an implied contract because he received the benefit.  The two contracts cannot exist together, governing the same transaction.")).  For these reasons, BSD's promissory estoppel claim fails as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss the Second Amended Complaint in its entirety.

**SO ORDERED**.

Date: February 21, 2024                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge